**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MICHAEL FAZIO,<br><br>Plaintiff,<br><br>v.<br><br>JAMES RIVER INSURANCE COMPANY, et al.,<br><br>Defendants. | CIVIL NO.: 20-1074 (MEL) |
| MICHAEL FAZIO,<br><br>Plaintiff,<br><br>v.<br><br>JAMES RIVER INSURANCE COMPANY,<br><br>Defendant. | CIVIL NO.: 22-1186 (MEL) |

**OPINION & ORDER**

## I. INTRODUCTION

Pending before the court are cross motions for summary judgment. ECF Nos. 267, 268.[1] On April 3, 2023, Defendant James River Insurance Company ("James River") filed a motion for summary judgment requesting that the court dismiss all claims against it. ECF No. 267 at 4–5, 43. That same day, Plaintiff Mr. Michael Fazio ("Mr. Fazio") filed a motion for summary judgment requesting that the court adjudicate liability on all of his claims against James River, Metropolitan Casualty Insurance Company ("Metropolitan Casualty"), Naihomi Figueroa

[1] Unless explicitly stated otherwise, any citations to docket entries in this opinion and order are referencing Case No. 20-1074, the Lead Case.

Fontánez ("Ms. Figueroa"), and Isaías Soto Reyes ("Mr. Soto") and thereby set a trial only on the issue of damages. ECF No. 268 at 2. Metropolitan Casualty, Ms. Figueroa, and Mr. Soto have not opposed Mr. Fazio's motion for summary judgment. Mr. Fazio and James River have accompanied their respective motions for summary judgment with proposed statements of undisputed material facts, and both parties additionally filed responses in opposition to the cross motions for summary judgment. ECF Nos. 267-1, 268-1, 278, 280. Further, both parties filed replies and James River filed a sur reply. ECF Nos. 282-1, 292, 293. Because the legal issues are substantially the same in the cross motions for summary judgment and the oppositions thereof, a single opinion and order is hereby issued addressing both dispositive motions. For the reasons set forth below, Mr. Fazio's motion for summary judgment is GRANTED IN PART and DENIED IN PART, and James River's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

This pending lawsuit is the product of consolidated cases: Case No. 20-1074, the Lead Case, and Case No. 22-1186, the Member Case. On September 29, 2020, Mr. Fazio filed a second amended complaint in the Lead Case against James River, Metropolitan Casualty, Ms. Figueroa, and Mr. Soto. ECF No. 71 at 2. In that complaint Mr. Fazio alleged that while being transported in an Uber ride, his vehicle was struck from behind while stopped at a traffic light. ECF No. 71 at 3–6. As a result of this accident, Mr. Fazio further alleged that he suffered damages, to which "all . . . defendants are jointly and severally liable," entitling him to compensation in excess of one million dollars ($1,000,000). ECF No. 71 at 6. Mr. Fazio further contends that James River breached the provisions of the uninsured motorist coverage as part of a policy issued to Uber "for the benefit of Uber drivers and passengers" by denying coverage and by failing to compensate him for his injuries. ECF No. 71 at 5, 7. In the Lead Case, Mr. Fazio

also brought five additional causes of action against James River alone: breach of contract, contractual breach of the implied covenant of good faith and fair dealing, tortious breach of the implied covenant of good faith and fair dealing, bad faith, and unfair claim adjustment practices. ECF No. 71 at 7–12.

In the Member Case, on June 22, 2022, Mr. Fazio filed an amended complaint against James River alone, alleging violations of Article II, Section 8 of the Constitution of the Commonwealth of Puerto Rico; violations of the Puerto Rico Libel and Slander Act of 1902, 32 L.P.R.A. §§ 3141–3149; and violations of the general tort provisions of Puerto Rico Civil Code Articles 1536 and 1538, 31 L.P.R.A. §§ 10801 and 10803. ECF No. 26 at 1 in Case No. 22-1186. In the 2022 lawsuit, Mr. Fazio alleges that James River defamed him during the pendency of the Lead Case. ECF No. 26 at 1 in Case No. 22-1186. On October 6, 2022, James River filed a motion to dismiss all claims in the Member Case, resulting in the court dismissing with prejudice one of the three causes of action: Mr. Fazio's claim that James River defamed him with its use of the word "extort" during an email exchange between the parties. ECF No. 50 in Case No. 22-1186. On September 30, 2022, the court consolidated both cases. ECF No. 238.

In addition to the claims listed above, some parties have filed crossclaims and counterclaims that are currently outstanding.[2] On May 11, 2020, James River filed a crossclaim against Defendants Metropolitan Casualty, Ms. Figueroa, and Mr. Soto, asserting its right to contribution and requiring that the crossclaim Defendants be called to respond first for any damages proven by Mr. Fazio against James River. ECF No. 23 at 31–32, ¶ 25. In response to this crossclaim, Metropolitan Casualty filed a counterclaim against James River, asserting that James River is directly liable to Mr. Fazio. ECF No. 33 at 5, ¶ 4.

[2] James River also filed a counterclaim against Mr. Fazio, alleging that Mr. Fazio acted obstinately and frivolously in litigating his claims. ECF No. 72 at 35. However, that claim was later dismissed. ECF No. 142 at 9.

## II. LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011) (quoting *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp.*, 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on *uncontradicted* evidence . . . . So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine

which version of the facts is most compelling." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan*, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. P. R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## III. MATERIAL FACTS NOT IN CONTROVERSY

### A. The Accident

On February 16, 2019, at approximately 9:53 p.m., Mr. Fazio was riding as a passenger in a motor vehicle operated by Melissa Griselle Bonilla ("Ms. Bonilla"), which was stopped at a traffic light at the intersection of Constitution Avenue and Reverendo Dávila Street, in San Juan, Puerto Rico. ECF No. 267-1 at 2, ¶ 8; ECF No. 278-1 at 3. During that time, Ms. Bonilla was providing transportation to Mr. Fazio through the Uber Driver app. ECF No. 267-1 at 3, ¶ 9; ECF No. 278-1 at 3. While Mr. Fazio's Uber was stopped at the traffic light, the vehicle was struck from behind by a vehicle operated by Ms. Figueroa and owned by Mr. Soto. ECF No. 268-1 at 2, ¶ 3; ECF No. 280-1 at 1, ¶ 3. Both Ms. Figueroa and Mr. Soto were uninsured on the date that the accident occurred. ECF No. 268-1 at 8, ¶ 50; ECF No. 280-1 at 7, ¶ 50.

**B. The Insurance Policies**

At the time of the motor vehicle accident, James River had in effect a business auto policy issued to Raiser LLC, Uber Technologies, Inc., and Uber Puerto Rico, LLC, among others, for the period from March 1, 2018 to March 1, 2019, with Uninsured Motorist ("UM") coverage to a limit of $1,000,000 for "Covered Autos." ECF No. 268-1 at 2, ¶ 4; ECF No. 280-1 at 2, ¶ 4. Similarly, at the time of the motor vehicle accident, Metropolitan Casualty had in effect an auto insurance policy issued to Mr. Fazio, for the policy period from September 10, 2018, to September 10, 2019, with UM coverage to a limit of $500,000. ECF No. 268-1 at 2, ¶ 5; ECF No. 280-1 at 2, ¶ 5. Under this policy, Metropolitan Casualty agreed to pay compensatory damages which Mr. Fazio is legally entitled to recover from the owner and driver of an uninsured motor vehicle. ECF No. 267-1 at 2, ¶ 4; ECF No. 278-1 at 2. However, Metropolitan Casualty's policy further states that "if you do not own the motor vehicle, our insurance will be excess over other similar uninsured [motorist] insurance available but only in the amount by which the limit of liability of this policy exceeds the limits of liability of the other available insurance" ECF No. 268-4 at 19.

**C. Post-Accident, Pre-Lawsuit Handling of Mr. Fazio's Claim**

On February 19, 2019, Mr. Lance Parks ("Mr. Parks"), a claims examiner for James River handling the matter, sent an email to Mr. Fazio stating

> The insurance for rideshare drivers accessing the UberPartner application is maintained through James River Insurance Company. . . . I am contacting you in regards to an incident on 2/16/2019 in which you were a rider being transported by a partner driver.
>
> I was unfortunately unable to reach you earlier today. Please contact me at your earliest convenience, or please let me know when would be a good time for me to contact you.

ECF No. 267-1 at 4, ¶ 20; ECF No. 278-1 at 5; ECF No. 267-3. On February 27, 2019, attorney Harold L. Rosnick ("Mr. Rosnick"), Mr. Fazio's stateside counsel, sent a letter of representation to James River, specifically to Mr. Parks,[3] stating that, among other things, Mr. Fazio would be making a claim under James River's applicable policy. ECF No. 268-1 at 3, ¶¶ 8, 10; ECF No. 280-1 at 2, ¶¶ 8, 10. Mr. Rosnick's letter asked Mr. Parks to provide the following:

> 1. copy of the policy issued by James River;
> 2. a statement by James River indicating whether its policy includes [personal injury protection] or medical benefits coverage in the case of an uninsured motorist claim;
> 3. a copy of the police report;
> 4. a copy of the incident report submitted to James River;
> 5. a copy of the investigation by James River;
> 6. a copy of any statements made;
> 7. information as to the party at fault;
> 8. information as to insurance on the vehicle at fault; and
> 9. copies of the photos showing damage to either vehicle involved in the accident…

ECF No. 267-1 at 4–5, ¶ 22; ECF No. 278-1 at 5–6.

On March 6, 2019, Mr. Parks acknowledged receipt of Mr. Rosnick's letter and requested him to provide James River with the following information to evaluate Mr. Fazio's claim:

> 1. A complete copy of reports from health care providers.
> 2. A statement from your client's employer stating the period of time lost from work and the earnings involved, confirmed by a physician's report.
> 3. All information on collateral sources for health care and wage loss benefits.
> 4. Information on any prior accidents or illness which have a bearing on your client's current medical condition.
> 5. Your theory of liability and any laws on which you base your conclusions.
> 6. A detailed description of all present and prior claims made by your client.

ECF No. 267-1 at 5, ¶¶ 23–24; ECF No. 278-1 at 6. On March 14, 2019, Mr. Parks sent the photos previously requested, and on March 21, 2019, Mr. Rosnick acknowledged that Mr. Parks

[3] The letter was sent to the attention to a Mr. Lance Parsons; however, both parties agree that this was a clerical mistake and that Mr. Rosnick intended to send the letter to Mr. Parks. ECF No. 268-1 at 3, ¶ 8; ECF No. 280-1 at 2, ¶ 8.

had sent him a copy of the requested police report. ECF No. 267-1 at 6, ¶¶ 28–29; ECF No. 278-1 at 7. Additionally, on March 21, 2019, Mr. Rosnick sent a letter to Mr. Parks, reiterating the request to James River to produce a copy of its policy and indicate whether it included personal injury protection or medical benefits coverage. ECF No. 268-1 at 3–4, ¶¶ 15–16; ECF No. 280-1 at 2, ¶¶ 15–16. On May 21, 2019, Mr. Rosnick wrote the following to Mr. Parks:

> This is to confirm your discussion a few minutes ago with my paralegal, John Blank, that James River agrees that the tortfeasor owner and/ or driver was uninsured and that you will accept Mr. Fazio's uninsured motorist claim. You also indicated that your policy provides for arbitration of an uninsured motorist claim. My client wishes to invoke the arbitration. Please provide me with a copy of the arbitration provisions of your policy.

ECF No. 267-1 at 6, ¶ 31; ECF No. 278-1 at 8.

On December 6, 2019, Mr. Parks requested that Mr. John Blank ("Mr. Blank"), Mr. Rosnick's paralegal, provide James River with the information of Mr. Fazio's newly retained Puerto Rico counsel, so it could get in touch and continue working on Mr. Fazio's claim. ECF No. 267-1 at 7, ¶ 34; ECF No. 278-1 at 8. In response on that same day, Mr. Blank provided Mr. Fazio's contact information, instead of that of his Puerto Rico counsel, and sent a copy of the record from neurologist Dr. Jeffrey Gross to facilitate the evaluation of Mr. Fazio's insurance claim. ECF No. 267-1 at 7, ¶¶ 35–36; ECF No. 278-1 at 8–9. Additionally, on Mr. Blank's December 6, 2019 response, he stated that Mr. Fazio had recently underwent electromyography testing. ECF No. 267-1 at 7, ¶ 37; ECF No. 278-1 at 9. Mr. Blank's response also advised that Mr. Fazio indicated that he needed carpal tunnel surgery, that he will be seeing orthopedist Dr. Stewart Gross for surgery, and that he has continuing cervical problems with radiating pain. ECF No. 267-1 at 7, ¶ 37; ECF No. 278-1 at 9; ECF No. 267-11 at 1.

On January 28, 2020, Mr. Rosnick sent to James River a letter, which explicitly stated that it was "submitted for the purpose of settlement discussion," with a summary of the post-

accident medical treatment received by Mr. Fazio and the medical records and bills in support of Mr. Fazio's claim totaling $4,481.12. ECF No. 267-1 at 8, ¶¶ 40–42; ECF No. 278-1 at 10. Mr. Rosnick's letter further stated: "There is an outstanding balance of $543 to Southport Chiropractic. The EMG testing is unpaid. Kindly review the enclosed and advise me as to your intended position." ECF No. 267-1 at 8, ¶¶ 40–42; ECF No. 278-1 at 10.

**D. The Lead Case Lawsuit**

On February 9, 2020, despite Mr. Rosnick's January 28, 2020, letter, Mr. Fazio filed suit against Mr. Soto, Ms. Figueroa, Metropolitan Casualty, and James River. ECF No. 267-1 at 8–9, ¶ 45; ECF No. 278-1 at 11. On February 13, 2020, in response to Mr. Rosnick's January 28, 2020 letter and before being served process, James River made a $9,325.87 settlement offer to Mr. Fazio. ECF No. 268-1 at 4, ¶ 22; ECF No. 280-1 at 4, ¶ 22. Mr. Fazio never responded to James River's settlement offer. ECF No. 267-1 at 9, ¶ 49; ECF No. 278-1 at 12. On March 4, 2020, Mr. Brian McGovern ("Mr. McGovern"), Senior Claim Adjuster for Metropolitan Casualty, sent an email to Mr. Fazio's counsel stating that Mr. Fazio had previously mentioned that he "would be agreeable to dismissing Met[ropolitan Casualty] from the case but would need documentation/assurances in regard to James River[]'s coverage. I [Mr. McGovern] will work on obtaining same from James River. ECF No. 267-1 at 10, ¶ 54; ECF No. 278-1 at 13. Mr. Fazio's counsel responded on that same day stating that he would consider dismissing Metropolitan Casualty from the case "if and when James River . . . formally admits to the existence of $1,000,000 in coverage for this claim and acknowledges that there is no coverage or other issue that may impact its role as primary insurer." ECF No. 267-1 at 10, ¶ 56; ECF No. 278-1 at 13–14.

In April 2020, Mr. Fazio requested James River to produce a copy of its policy, explain its coverage posture, and confirm whether it is the primary insurer. ECF No. 268-1 at 5, ¶¶ 25, 27, 29–30; ECF No. 280-1 at 5, ¶¶ 25, 27, 29–30. On April 17, 2020, James River submitted a proposed confidentiality agreement draft, subject to the evaluation of Mr. Fazio and his stateside counsel, that it required be entered into as a protective order for James River to agree to produce its policy. ECF No. 268-1 at 6, ¶ 37; ECF No. 280-1 at 6, ¶ 37. On April 23, 2020, Mr. Fazio filed a motion to compel the production James River's policy. ECF No. 23. On June 4, 2020, James River reiterated that "the production of [James River's] insurance policy is not required in this action until, at least, after the parties hold the Rule 26(f) conference . . ." ECF No. 268-1 at 8, ¶ 51; ECF No. 280-1 at 7, ¶ 51. On July 24, 2020, the court granted Mr. Fazio's motion to compel, and James River produced its policy without the confidentiality agreement it had previously required. ECF No. 268-1 at 11, ¶ 67; ECF No. 280-1 at 9, ¶ 67.

On May 11, 2020, in answering the original complaint, James River denied liability and asserted that it was not Mr. Fazio's primary insurer. ECF No. 268-1 at 7–8, ¶¶ 41–44; ECF No. 280-1 at 6, ¶¶ 41–44. Subsequently, on July 23, 2020, James River again stated that it was not liable to Mr. Fazio. ECF No. 268-1 at 9–10, ¶¶ 53–63; ECF No. 280-1 at 7–8, ¶¶ 53–63. On October 13, 2020, in its answer to the second amended complaint, James River maintained that it was not directly liable to Mr. Fazio. ECF No. 268-1 at 13–14, ¶¶ 86, 93–95; ECF No. 280-1 at 10–11, ¶¶ 86, 93–95. Additionally, on October 13, 2020, Mr. Fazio provided James River a medical records authorization form to enable James River to obtain certified copies of any and all of the medical records considered necessary for the investigation and adjustment of his claim. ECF No. 268-1 at 15, ¶ 97; ECF No. 280-1 at 12, ¶ 97. On February 22, 2021, the court ordered Mr. Fazio, to the extent that he had not already done so, to produce certified copies of all his

medical records from January 1, 2014, to the present. ECF No. 268-1 at 17, ¶ 109; ECF No. 280-1 at 13, ¶ 109. Afterwards, on May 13, 2021, James River reiterated its settlement offer of $9,325.87. ECF No. 268-1 at 18, ¶ 117; ECF No. 280-1 at 13, ¶ 117. On August 25, 2021, Mr. Fazio withdrew his claim for loss of earnings and loss of earnings capacity. ECF No. 267-1 at 14, ¶ 78; ECF No. 278-1 at 19.

**E. The Member Case Lawsuit**

On February 18, 2020, Dr. Stewart Gross stated his opinion that Mr. Fazio's involvement in the motor vehicle accident had produced his bilateral carpal tunnel syndromes and stenosing tenosynovitis of the left index digit. ECF No. 268-1 at 5, ¶ 24; ECF No. 280-1 at 4–5, ¶ 24. Later that year, on September 29, 2020, Mr. Fazio filed his second amended complaint in the Lead Case which stated, among other things, that because of Ms. Figueroa's negligence, he "sustained the following injuries of a serious, painful and permanent nature . . . bilateral carpal tunnel syndrome." ECF No. 71 at 4, ¶ 18.a. On June 7, 2021, Mr. Fazio produced to James River the supplemental expert report submitted by Dr. Stewart Gross, after reviewing Mr. Fazio's complete certified medical records dating back to January 1, 2014, which stated that the accident did not cause Mr. Fazio's carpal tunnel syndrome but aggravated those symptoms. ECF No. 268-1 at 19, ¶ 121; ECF No. 280-1 at 14, ¶ 121.

On June 28, 2021, Mr. Fazio sent to the Puerto Rico Insurance Commissioner (the "Commissioner") the pre-suit notice (the "Form") required to institute a civil action for alleged violations of the Puerto Rico Insurance Code. 26 L.P.R.A. § 2716d; ECF No. 267-1 at 17–18, ¶ 93; ECF No. 278-1 at 23. The Form included two attachments: the second amended complaint in the Lead Case (ECF No. 71), and the motion for summary judgment in the Lead Case (ECF No. 41). ECF No. 267-1 at 18, ¶ 94; ECF No. 278-1 at 23. While submitting the Form, Mr. Fazio

certified that all the information provided in the Form was true and correct, which included the second amended complaint, where he alleged that his bilateral carpal tunnel syndrome was caused by the accident. ECF No. 267-1 at 18, ¶ 95; ECF No. 278-1 at 23.

On July 13, 2021, James River sent a response letter to the Commissioner regarding the Form Mr. Fazio submitted. ECF No. 267-1 at 18, ¶ 96; ECF No. 278-1 at 24. By this date, James River had received and was aware of all of Mr. Fazio's medical records produced as a result of the court's earlier order. ECF No. 267-1 at 13, ¶ 72; ECF No. 278-1 at 18. In its response letter James River contended, among other things, that Mr. Fazio's Form was deficient and expressed its opinion that Mr. Fazio's prior medical records contained indications that he could be claiming damages that were preexisting to the accident, and, if true, it would constitute a violation of the Insurance Code. ECF No. 267-1 at 18–19, ¶ 97; ECF No. 278-1 at 24. Additionally, when James River sent the response letter, the allegations that existed in the Lead Case were that the accident was the proximate cause of Fazio's bilateral carpal tunnel syndrome. ECF No. 267-1 at 21, ¶ 107; ECF No. 278-1 at 27–28.

## IV. ANALYSIS

Mr. Fazio moves for summary judgment on several grounds against all defendants. First, Mr. Fazio moves for partial summary judgment solely as to the tort liability (not damages) of Ms. Figueroa and Mr. Soto.[4] ECF No. 268 at 3. Second, Mr. Fazio asserts that there is no genuine dispute that his personal automobile policy with Metropolitan Casualty also affords him UM coverage for the accident. ECF No. 268 at 3. Third, Mr. Fazio moves for summary judgment on the following claims against James River in the Lead Case: breach of contract, bad faith,

[4] Mr. Fazio also appears to be bringing a tort claim against James River, which will be addressed in turn, based on how the second amended complaint is drafted. ECF No. 71 at 6. However, Mr. Fazio does not move for summary judgment on said claim.

contractual breach of the implied covenant of good faith and fair dealing, and tortious breach of the implied covenant of good faith and fair dealing. ECF No. 268 at 9, 11, 14. However, Mr. Fazio is not seeking summary judgment on his cause of action for unfair claims adjustment practices under the Insurance Code and has instead decided to withdraw said claim. ECF No. 268 at 17; 26 L.P.R.A. § 2716a. Finally, Mr. Fazio argues that summary judgment is proper on his two remaining defamation claims in the Member Case. ECF No. 368 at 17.

In its separate motion for summary judgment, James River argues that it is entitled to judgment as a matter of law on all outstanding claims against it: (1) tort, (2) breach of contract, (3) contractual breach of the implied covenant of good faith and fair dealing, (4) tortious breach of the implied covenant of good faith and fair dealing, (5) bad faith, (6) unfair claims adjustment practices, and (7) the two remaining defamation claims. ECF No. 267 at 43. Before addressing the claims against James River, the court will first address the claims against the other co-defendants: Metropolitan Casualty, Mr. Soto, and Ms. Figueroa.

**A. Tort Liability of Ms. Figueroa and Mr. Soto**

Neither Ms. Figueroa nor Mr. Soto have submitted any response in opposition to Mr. Fazio's motion for summary judgment to dispute Mr. Fazio's tort claim against them or challenge whether they were insured at the time of the accident. Moreover, none of the remaining parties dispute the tort liability of Ms. Figueroa and Mr. Soto. The substantive law of Puerto Rico governs the instant diversity action. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Puerto Rico's general tort statute provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. § 5141.[5] To establish tort liability, a plaintiff must demonstrate three elements: "(1)

[5] Puerto Rico's general tort statute was replaced in November 2020 and is now denominated as Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. § 10801. However, because the events leading up to the Lead Case and the

evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." *Vázquez Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007) (citing *Torres v. KMart Corp.*, 233 F. Supp. 2d 273, 277–78 (D.P.R. 2002)). Under Puerto Rico's Vehicle and Traffic Law, a vehicle's owner is liable for damages caused by the negligence of another's use of that vehicle who had authorization to use the vehicle on behalf of its owner. 9 L.P.R.A. § 5621.

Here, all tort elements are satisfied as to Ms. Figueroa. It is undisputed that Ms. Figueroa was driving Mr. Soto's vehicle and struck Mr. Fazio's Uber while it was stopped at a redlight. ECF No. 268-1 at 2, ¶ 3; ECF No. 280-1 at 1, ¶ 3. Neither Ms. Figueroa nor Mr. Soto provide any justification as to why Ms. Figueroa struck the Uber vehicle while it was stopped at a redlight. Nor do they provide evidence that Ms. Bonilla, Mr. Fazio's Uber driver, was negligent. Because an accident like this does not—without reasonable justification—occur absent negligence, the record strongly suggests that Ms. Figueroa was negligent. Moreover, both James River and Metropolitan Casualty have stipulated to the fact that the accident was the result of Ms. Figueroa's negligence, and Ms. Figueroa has not opposed Mr. Fazio's motion for summary judgment. ECF No. 268-1 at 20, ¶ 132; ECF No. 280-1 at 17, ¶ 132; ECF No. 76 at 2, ¶ 17. Mr. Fazio has also presented sufficient evidence in the form of medical reports from Dr. Richard Pinsky and Dr. Jeffrey Gross, among others, indicating that he was injured because of the accident. *E.g.*, ECF No. 268-18 at 4, 30.

However, Mr. Fazio has not cited to any evidence indicating that Ms. Figueroa had permission from Mr. Soto to drive his vehicle. Therefore, Mr. Fazio has failed to meet one of the

---

second amended complaint was filed before November 2020, the old provisions of the Civil Code will apply to the claims in the Lead Case.

elements to grant summary judgment against Mr. Soto. *See* 9 L.P.R.A. § 5621. Accordingly, because a reasonable jury, based on the evidence presented, could only find that the collision was caused by Ms. Figueroa's negligence, the request for entry of partial summary judgment as to Ms. Figueroa is granted. Additionally, the court grants Mr. Fazio's request to declaratory judgment but only with respect to the following: that the accident occurred solely due to the negligence of Ms. Figueroa and through no fault or negligence of Mr. Fazio and declares that Ms. Figueroa is liable for damages to be determined at trial. However, Mr. Fazio's request for entry of partial summary judgment as to the liability of Mr. Soto is denied because Mr. Fazio has failed to cite to evidence indicating that Mr. Soto authorized Ms. Figueroa to use his vehicle and therefore should be held liable under 9 L.P.R.A. § 5621.

**B. Mr. Fazio's Coverage Under the Metropolitan Casualty Policy**

The facts regarding Metropolitan Casualty's coverage provided to Mr. Fazio are undisputed as Metropolitan Casualty has not submitted any arguments or evidence to dispute whether its policy affords Mr. Fazio UM coverage. Under Puerto Rico law, "insurance contracts generally are viewed as adhesion contracts . . . requiring liberal construction in favor of the insured." *Lopez & Medina Corp. v. Marsh USA*, Inc., 667 F.3d 58, 64-65 (1st Cir. 2012) (citing *Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of P.R., Inc.*, 167 F.3d 1, 7 (1st Cir. 1999)). A court "must first turn to the Insurance Code of Puerto Rico ('Insurance Code') as [its] guide on the path to interpreting the underlying insurance contract." *Id.* at 64 (citing 26 L.P.R.A. § 101 *et seq*). Under the Insurance Code, "every insurance contract 'shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made a part of the policy.'" *Id.* (quoting 26 L.P.R.A. § 1125).

The Puerto Rico Civil Code is appropriate as a supplemental source of law where the Insurance Code does not provide guidance. *Id.* "[W]here a contract's wording is explicit and its language unambiguous, the parties are bound by its clearly stated terms and conditions, with no room for further debate." *Id.* Indeed, even though "[a]mbiguities should . . . be resolved in the manner least favorable to the insurer. . . , this praxis does not compel or require courts to interpret a clear, unambiguous clause that favors the insurer in a manner that would benefit the insured." *Metlife Cap. Corp. v. Westchester Fire Ins. Co.*, 224 F. Supp. 2d 374, 382 (D.P.R. 2002). When determining coverage under Puerto Rico law, "the insured bears the burden of establishing coverage under an insurance policy." *Nahan v. Pan Am. Grain Mfg. Co., Inc.*, 62 F. Supp. 2d 419, 424 (D.P.R. 1999) (citing *St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp.*, 26 F.3d 1195, 1200 (1st Cir. 1994)).

Here, Metropolitan Casualty issued an auto insurance policy to Mr. Fazio, covering the period from September 10, 2018, to September 10, 2019, which covers the date of the accident, February 16, 2019. ECF No. 268-4 at 3. The policy's coverage applies to accidents and losses which happen while the policy is in effect in the United States and its territories or possessions. ECF No. 268-4 at 25. Because the accident occurred in Puerto Rico, a U.S. territory, the coverage applies. Moreover, the policy provides UM coverage providing that Metropolitan will pay damages the insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. ECF No. 268-4 at 17–18. It is undisputed and admitted that Mr. Soto and Ms. Figueroa were not insured at the time of the accident, and therefore the UM coverage provision applies. ECF No. 268-1 at 8, ¶ 50; ECF No. 280-1 at 7, ¶ 50. However, the policy explains that its UM coverage is not primary when the insured does not own the vehicle and other insurance is available: "[I]f you do not own the motor vehicle, our insurance will be excess over other similar

uninsured motorist . . . insurance available but only in the amount by which the limit of liability of this policy exceeds the limits of liability of the other available insurance." ECF No. 268-4 at 19. Indeed, on November 17, 2020, Metropolitan Casualty admitted that its policy affords Mr. Fazio coverage, albeit secondary to the primary insurer. ECF No. 268-5 at 33–34, ¶¶ 32–33. In this case, it is undisputed that Mr. Fazio was a passenger, not an owner, of the Uber vehicle that was struck by Ms. Figueroa, and to be explained below, James River's insurance policy is primary to Mr. Fazio. ECF No. 267-1 at 2, ¶ 8; ECF No. 278-1 at 3. Thus, considering the clear policy language and Metropolitan Casualty's admissions, the court finds as a matter of law that Metropolitan Casualty's insurance policy provides Mr. Fazio UM coverage for the accident—*but only in the amount that is in excess over other available UM insurance* and to the extent that Mr. Soto and Ms. Figueroa are liable. Therefore, subject to that condition, Mr. Fazio's motion for summary judgment on whether Metropolitan Casualty's policy affords him UM coverage for the February 16, 2019, accident is granted.

**C. Breach of Contract Claim Against James River**

Mr. Fazio asserts that James River is liable for breach of contract as a matter of law because James River denied him coverage when its policy afforded him UM coverage at the time of accident. ECF No. 268 at 6–7, 9. James River contends that Mr. Fazio does not have standing to bring a breach of contract claim against it because James River did not issue a policy to Mr. Fazio, and therefore it does not have any contractual relationship with Mr. Fazio. ECF No. 267 at 19. In the alternative, James River argues that Mr. Fazio has not shown damages resulting from the alleged breach of contract. ECF No. 280 at 9.

Under Puerto Rico law, a claim for breach of contract has three elements: (1) a valid contract; (2) a breach by one of the parties to the contract; and (3) resulting damages. 31

L.P.R.A. § 3018 ("Those who in fulfilling their obligations are guilty of fraud, negligence or delay, and those who in any manner whatsoever at in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."); *Mega Mega Holdings, Inc. v. Aerco Broad. Corp.*, 852 F. Supp. 2d 189, 199–200 (D.P.R. 2012) (citations omitted); *Unisys P.R., Inc. v. Ramallo Bros. Printing, Inc.*, 128 D.P.R. 842, 853–54 (1991). UM coverage "provides compensation to insureds for their own injuries, when the tortfeasors who caused the injuries have no liability insurance of their own." 7A Couch on Ins. § 108:1. "Generally, UM . . . coverage requires that the claimant qualify as an insured under the policy, is injured while engaged in some activity involving a vehicle covered by the policy, and the injury is caused by an uninsured . . . person or vehicle." 9 Couch on Ins. § 123:1.

Here, James River issued a business auto policy to Raiser LLC, Uber Technologies, Inc., and Uber Puerto Rico, LLC, among others, for the policy period from March 1, 2018, to March 1, 2019. ECF No. 268-3 at 1, 26–27. The policy also provides an endorsement titled "Puerto Rico Uninsured Motorist Coverage," which provides up to $1,000,000 of coverage per accident:

> [James River] will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the 'insured' caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance[,] or use of the "uninsured motor vehicle."

ECF No. 268-3 at 1, 32, § A.1. An "'uninsured motor vehicle' means a land motor vehicle . . . [f]or which no liability . . . policy at the time of an 'accident' provides at least the amounts required by the applicable law." ECF No. 368-3 at 35, § F.3.a.

Further, under this UM policy, an insured is "[a]nyone 'occupying' a covered 'auto.'" ECF No. 268-3 at 33, § B.2.a. A "covered auto" is "any passenger auto while being used by a 'Rideshare Driver' [providing transportation services] in connection with the 'UberPartner

application.'" ECF No. 268-3 at 23. "'Rideshare Driver' means an individual that is operating a motor vehicle in connection with the use of the 'UberPartner application,' and "'UberPartner application' means any smartphone application licensed by a subsidiary of Uber Technologies, Inc. which is utilized by a Rideshare Driver to receive requests for transportation from passengers." ECF No. 268-3 at 36. Moreover, the policy applies to all rides originating in Puerto Rico. ECF No. 268-3 at 28. Finally, the coverage provides that "[w]here permitted by law, any Uninsured Motorists . . . coverage provided by this policy and/or its endorsements, is primary for any passenger occupying a covered 'auto.'" ECF No. 268-3 at 40.

Applying the unambiguous provisions described above with the undisputed facts of this case shows that Mr. Fazio is covered under James River's policy. As an introductory matter, the date of the accident, February 16, 2019, is within the policy coverage period spanning March 1, 2018, to March 1, 2019. ECF No. 268-3 at 1. Mr. Fazio is also covered under James River's UM policy because (1) he qualifies as an insured, (2) his Uber was struck by an uninsured vehicle, and (3) his ride originated in Puerto Rico. First, Mr. Fazio is an insured because at the time of the accident, he was occupying a motor vehicle driven by Ms. Bonilla providing transportation through the UberPartner application (i.e., a covered auto). ECF No. 267-1 at 2–3, ¶¶ 8–11; ECF No. 278-1 at 3. Second, as explained above, both Mr. Soto and Ms. Figueroa were uninsured at the time of the accident, and therefore the vehicle that struck Mr. Fazio's Uber was an uninsured motor vehicle. ECF No. 268-1 at 8, ¶ 50; ECF No. 280-1 at 7, ¶ 50. Third, while the parties do not explicitly stipulate that Mr. Fazio's Uber ride originated in Puerto Rico, the only plausible result is that Mr. Fazio's ride originated in Puerto Rico considering the accident occurred in an island. Therefore, Mr. Fazio has standing to bring a breach of contract claim against James River.

Because Mr. Fazio was occupying a covered vehicle at the time of the accident and is therefore an insured under the policy, the only question remaining is whether James River's UM policy is permitted by the state law of Puerto Rico to provide primary coverage. ECF No. 268-3 at 40. Nothing in the laws of Puerto Rico indicate that this UM policy would be prohibited, and nor does James River provide any authority to conclude otherwise. The language of the policy is clear, and James River fails to cite to any provision of its policy to introduce ambiguity or indicate that Mr. Fazio is not covered or that its insurance coverage is not primary. Accordingly, the parties do have a contractual relationship in which Mr. Fazio is an insured, and James River's policy is primary. The court now turns to whether James River breached the terms and conditions of the insurance policy that benefits Mr. Fazio.

As explained above, per the UM policy, James River was contractually bound to provide Mr. Fazio UM coverage after the accident. Although James River made efforts to adjust Mr. Fazio's claim before the commencement of the Lead Case, and made a settlement offer after the filing of the complaint but before it was served with process, on May 11, 2020, while answering the complaint, James River asserted that Mr. Fazio was not covered under its UM policy, and even if James River was liable to Mr. Fazio, its policy was not primary. ECF No. 23 at 22, ¶ 35; ECF No. 23 at 30–31, ¶¶ 17–23. Indeed, as evidenced by its contentions in its pending motion for summary judgment, James River currently holds the position that it is not contractually liable to Mr. Fazio. ECF No. 267 at 19. Accordingly, James River breached its contract with Mr. Fazio on May 11, 2020, when it completely denied liability under its policy.

The final element to succeed on a breach of contract claim is to show evidence of damages. "Under Puerto Rico law, damages in a contract action are limited to those which are reasonably foreseeable at the time the parties entered into the contract . . . , and these may

include moral damages." *Cordero v. Disc Makers*, No. CIV 05-1611, 2007 WL 954315, *3 (D.P.R. Mar. 28, 2007) (citations omitted). In contrast to pecuniary or economic damages, "[t]he Puerto Rico Supreme Court defines moral damages as 'the damage inflicted on the beliefs, feeling, dignity, social esteem, or physical or mental health of the injured party.'" *Rojas-Buscaglia v. Taburno-Vasarhelyi*, 199 F. Supp. 3d 520, 542–43 (2016) (quoting *Rivera Colon v. Diaz Arocho*, 165 D.P.R. 408, 428 (2005)). Mr. Fazio has not pointed with specificity to any evidence of reasonably foreseeable moral damages that he has suffered from James River's breach of contract. What he has shown, however, is evidence of pecuniary or economic damages by virtue of James River failing honor its UM insurance policy requiring compensation (up to the policy limits) for the damages—physical, mental, or otherwise—caused by Ms. Figueroa's negligence. Hence, James River's motion for summary judgment on the breach of contract is denied, and Mr. Fazio's motion for summary judgment on the breach of contract claim is granted. Once the jury decides what damages, if any, were caused by Ms. Figueroa's negligence, James River will be liable for the exact same amount for its breach of the contract.[6]

**D. Contractual Bad Faith & Breach of the Implied Covenant of Good Faith and Fair Dealing Claims Against James River**

Both parties move for summary judgment on Mr. Fazio's bad faith and contractual breach of the implied covenant of good faith and fair dealing claims. ECF No. 267 at 19; ECF No. 268 at 11. Because each claim shares common questions of law and fact, the court will consider both claims together and as one. *Cf. Punta Lima, LLC v. Punta Lima Dev. Co., LLC*, 440 F. Supp. 3d 130, 154–55 (D.P.R. 2020) (analyzing the duty of good faith and contractual bad faith together); *Bauza v. Universal Ins. Co.*, No. CV 18-1705, 2020 WL 13158669, at *5–6 (D.P.R. Aug. 4,

[6] Of course, Mr. Fazio will not be compensated twice for the same damages. If he collects in full from James River, he will not be able to collect then from Ms. Figueroa, and vice versa.

2020) (listing contractual dolo as an element in a breach of good faith and fair dealing claim).[7] Mr. Fazio moves for summary judgment on his claim of bad faith and his contractual breach of the implied covenant of good faith and fair dealing claims, asserting that James River acted in bad faith in adjusting his claim and litigated obstinately and frivolously to deprive him of reasonable compensation. ECF No. 268 at 11–16. Alternatively, James River moves for summary judgment on the bad faith claim arguing that it acted reasonably and in good faith in adjusting Mr. Fazio's claim and any delay in payment is solely due to the actions of Mr. Fazio. ECF No. 267 at 6–18. In addition, James River contends that the contractual breach of the implied covenant of good faith and fair dealing claim should be dismissed because James River has no contractual relation with Mr. Fazio.[8] ECF No. 267 at 19.

Puerto Rico law implies into contracts the covenant of good faith and fair dealing. 31 L.P.R.A. § 3375; *see also Cantellops v. Alvaro-Chapel*, 234 F.3d 741, 744 (1st Cir. 2000) (citations omitted). This duty of good faith applies to contract performance. *Adria Int'l Grp., Inc. v. Ferré Dev., Inc.*, 241 F.3d 103, 108–09 (1st Cir. 2001). "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency

[7] Other jurisdictions have treated a breach of the implied covenant of good faith and fair dealing claim and bad faith claim interchangeably. *Preferred Display, Inc. v. Great Am. Ins. Co. of New York*, 288 F. Supp. 3d 515, 527 (D. Conn. 2018) ("Connecticut courts use the terms 'bad faith,' 'lack of good faith,' and 'breach of the covenant of good faith and fair dealing' interchangeably, and accordingly apply the same standards for each type of claim." (citation omitted)); *DeRosa v. Ass'n of Apartment Owners of the Golf Villas*, 185 F. Supp. 3d 1247, 1251 (D. Haw. 2016) ("Under Hawai'i law, the tort of bad faith is also known as breach of the duty of good faith and fair dealing."); *Healy-Petrik v. State Farm Fire & Cas. Co.*, No. 2:20-CV-611, 2020 WL 6273771, at *2 (D. Utah Oct. 26, 2020) ("The terms 'bad faith' and 'breach of good faith and fair dealing' are used interchangeably in Utah contract cases." (citations omitted)); *Mitteis v. Cont'l W. Ins. Co.*, No. 8:22CV75, 2022 WL 20679310, at *1 n.3 (D. Neb. Aug. 26, 2022) ("Plaintiffs refer to the second cause of action interchangeably as the 'bad-faith claim' and the claim for 'breach of the duty of good faith and fair dealing.' Nebraska courts also use both terms." (citations omitted)); *Ruggieri v. Hartford Ins. Co. of the Midwest*, No. 2:13-CV-00071, 2013 WL 2896967, at *2 (D. Nev. June 12, 2013) ("Under Nevada law, breach of the implied covenant of good faith and fair dealing can give rise to a tort . . . . In the insurance context, this tort is commonly referred to as a claim for 'bad faith.'" (citations omitted)); 45 Am. Jur. Trials 475 § 8 (Originally published in 1992) ("The phrase 'bad faith' has evolved as shorthand legal jargon to describe a breach of the implied contract of good faith and fair dealing inherent in every contract of insurance.")

[8] Because the court finds that the parties do have a contractual relationship, as explained above, this argument is not addressed further.

with the justified expectations of the other party." *Id.* at 108 (citing Restatement (Second) of Contracts § 205 cmt. a (1981)); *see also Century Packing Corp. v. Giffin Specialty Equip. Co.*, LLC, 438 F. Supp. 2d 16, 26 (D.P.R. 2006).

"In determining whether liability attaches in a particular instance, an inquiring court typically examines the totality of the circumstances." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 12 (1st Cir. 2002) (citing *Shelley v. Trafalgar House Pub. Ltd*., 977 F. Supp. 95, 98 (D.P.R. 1997)). "[T]he ethical content of each act must be examined in the light of its particular circumstances." *Id.* (citation omitted). "Liability exists if, in light of all the surrounding circumstances, the party's actions appear arbitrary, deceitful, or animated by some improper purpose." *Id.* (citations omitted). A party may breach the implied covenant of good faith and fair dealing if it acts with bad faith or dolo. *Punta Lima*, 440 F. Supp. 3d at 155.

Under Puerto Rico law, bad faith is equal to the concept of "dolo." *Canales v. Pan American*, 112 D.P.R. 329, 340 (1982). "[C]ontractual dolo is a broad term that 'includes deceit, fraud, misrepresentation, undue influence' and other insidious machinations." *Puerto Rico Tel. Co. v. SprintCom, Inc.*, 662 F.3d 74, 99 (1st Cir. 2011) (citing *Márquez v. Torres Campos*, 111 D.P.R. 854, 863–64 (1982)). "Dolo entails a malicious intent to do harm[] and is thus differentiated from mere negligence." *Event Producers, Inc. v. Tyser & Co.*, 854 F. Supp. 35 (D.P.R. 1993), *aff'd sub nom. Event Producers, Inc. v. Tyser & Co. N. Am.*, 37 F.3d 1484 (1st Cir. 1994). Dolo "implies will, and not merely omission." *Id.* at 32.

An insured alleging bad faith against an insurance company has the burden of showing that the insurance company had the "conscious [and] deliberate purpose of avoiding the normal performance of [its] . . . obligations" under the insurance policy or whether it acted unreasonably in relation to the duties imposed by the Puerto Rico Insurance Code. *Marquez v. Torres Campos*,

111 D.P.R. 854, 11 P.R. Offic. Trans. 1085, 1098 (1982) (quoting 8-1 Manresa, Comentarios al Código Civil Español 209 (6th ed. 1967) (Ed. Reus Madrid)); *see also Canales*, 112 D.P.R. at 340; *Event Producers*, 854 F. Supp. at 39–40 ("The standard would be either conscious wrongdoing, reckless indifference or the lack of a reasonable basis for denying claim."); *U.S. ex rel. Andrews Marine Servs., Inc. v. United Sur. & Indem. Co.*, No. CIV. 04-1135, 2005 WL 1308919, *9 (D.P.R. June 1, 2005) ("The reasonableness of the defendant's actions was examined in relation to the duties imposed by the Puerto Rico Insurance Code."), *R. & R. adopted sub nom. Andrews Marine Serv., Inc. v. United Sur. & Indem. Co.*, No. 04-1135, 2005 WL 1653098 (D.P.R. June 21, 2005). Put differently, to succeed on a bad faith claim, an insured must show that (1) the insurer acted unreasonably (2) in denying or delaying a claim and (3) did so intentionally or knowingly. "[A] court must analyze the subjective intent of the breaching party in order to make a finding of dol[o]." *Servicios Comerciales Andinos, S.A. v. Gen. Elec. Del Caribe, Inc.*, 145 F.3d 463, 477 (1st Cir. 1998) (citation omitted). "The contracting parties' good faith is presumed; rebuttal of such a presumption requires evidence of intentional fault or bad faith." *Gazelle v. MR 314 Fortaleza LLC*, Civ. No. 16-2500, 2018 WL 1322155, at *6 (D.P.R. Mar. 12, 2018).[9]

Here, both parties have produced evidence supporting and negating the theory that James River acted in bad faith in adjusting Mr. Fazio's claim. Therefore, summary judgment is not proper on Mr. Fazio's claim for bad faith. First, there is a genuine dispute of material fact as to whether James River's first settlement offer was made in good faith. Under Article 27.161 of

[9] "Th[e] imposition of damages []for a dolo-type performance of a contract[] is broader than that resulting from a good faith breach of contract, where, in contrast, damages are limited to 'those foreseen or which may have been foreseen, at the time of constituting the obligation, and which may be a necessary consequence of its nonfulfillment.'" *Puerto Rico Tel. Co. v. SprintCom, Inc.*, 662 F.3d 74, 99 (1st Cir. 2011) (quoting 31 L.P.R.A. § 3024).

the Insurance Code, insurers shall not attempt to settle a claim for less than the amount to which the insured is reasonably entitled to. 26 L.P.R.A § 2716a(8).

James River asserts that its first settlement offer of $9,325.87 made on February 13, 2020, was reasonable because it was in response to Mr. Fazio's January 28, 2020, settlement demand for approximately $5,000 and Mr. Fazio's medical records provided at that time. ECF No. 267 at 15–16; ECF No. 267-1 at 8, ¶ 44. Mr. Fazio argues that the first settlement offer was not reasonable and made in bad faith because the January 28, 2020, letter was not a settlement demand for approximately $5,000 and because James River was already aware, based on the December 6, 2019, letter from Mr. Blank, that, among other things, Mr. Fazio needed carpal tunnel surgery. ECF No. 278-1 at 11; ECF No. 268 at 15. A reasonable jury could side with James River and conclude that its $9,325.87 settlement offer was reasonable because it was based on the only concrete medical evidence that Mr. Fazio had produced up to that point and because the January 28, 2020, letter was in fact a settlement offer because it clearly stated, "This letter is submitted for the purpose of settlement discussion." ECF No. 267-12 at 1. Alternatively, a reasonable jury could agree with Mr. Fazio that the offer was made in bad faith because Mr. Blank's December 6, 2019, letter had already put James River on notice that Mr. Fazio required carpal tunnel surgery and the January 28, 2020, letter made no mention of this when listing medical expenses.

James River has produced evidence suggesting it acted reasonably. Under Article 27.161 of the Insurance Code, an insurer must adopt and implement reasonable methods for the expeditious investigations of claims and make a good faith attempt to make rapid, fair, and equitable adjustment of a claim. 26 L.P.R.A § 2716a(3), (6). Here, James River reached out to Mr. Fazio three days after the accident to begin working on his claim. ECF No. 267-1 at 4, ¶ 20;

ECF No. 278-1 at 5. Additionally, on March 6, 2019, James River requested Mr. Fazio to produce, among other things, documentation supporting his damages from the accident in which Mr. Fazio did not begin producing until December 6, 2019, and subsequently on January 28, 2020. ECF No. 267-1 at 5, ¶ 24; ECF No. 278-1 at 6; ECF No. 267-1 at 7–8, ¶¶ 36, 41–43; ECF No. 278-1 at 9–10. This evidence tends to show that James River acted reasonably in adjusting Mr. Fazio's claim and did not create unreasonable delay because it did not have tangible medical expenses to start adjusting the claim until January 2020.

Mr. Fazio attempts to explain away his delay in providing James River medical documents to support his claim by arguing that his duties under the policy were to authorize James River to obtain his medical records and to submit to examination, and once he complied, it was on James River to obtain his medical records. ECF No. 268 at 12. While Mr. Fazio correctly interprets that the policy places a duty on him to authorize James River to obtain his medical records, the policy is silent on whether it is James River's duty to obtain an insured's medical records. ECF No. 268-3 at 11, § A.2.b.(4). Mr. Fazio further argues that he had the reasonable expectation that James River would shoulder the burden and expense of obtaining his medical records to expeditiously investigate his claim. ECF No. 68 at 13. However, even if Mr. Fazio's expectation was reasonable, it is unclear why he waited until October 13, 2020, seven months after James River had requested his medical reports on March 6, 2020, to authorize James River to obtain his medical records. ECF No. 268-1 at 15, ¶ 97; ECF No. 280-1 at 12, ¶ 97; ECF No. 267-1 at 5, ¶¶ 23–24; ECF No. 278-1 at 6. Moreover, Mr. Fazio fails to cite to any authority supporting his proposition that an insurer should shoulder the burden of paying for an individual's medical records when filing a claim. The question of reasonableness is traditionally left for a jury to decide, and such is the proper course of action here. *Ramirez-Lluveras v. Pagan-*

*Cruz*, 857 F. Supp. 2d 221 (D.P.R. 2012) (citing *Roy v. Inhabitants of Lewiston*, 42 F.3d 691, 694–95 (1st Cir.1994)).

Alternatively, Mr. Fazio has produced evidence suggesting James River acted unreasonably. Under Article 27.161 of the Insurance Code, insurers shall not deny coverage when the insured turned down the payment offer of a claim for such coverage. 26 L.P.R.A § 2716a(15). Here, is undisputed that James River made an offer to adjust Mr. Fazio's insurance claim on February 13, 2020, which Mr. Fazio implicitly or explicitly rejected. ECF No. 268-1 at 4, ¶ 22; ECF No. 280-1 at 4, ¶ 22.; ECF No. 267-1 at 9, ¶ 49; ECF No. 278-1 at 12. While this offer to adjust the claim is not an explicit admission by James River that Mr. Fazio was covered by its insurance, it can be reasonably construed to indicate such. Along with this, James River, in an email to Metropolitan Casualty, sent an email on March 13, 2019, with the subject "Mr. Fazio" stating that "James River Insurance Company is primary over the personal insurance."[10] These two facts could lead a reasonable jury to believe that James River made convincing representations that its insurance policy covered Mr. Fazio and that it was the primary insurer.

Thereafter, on May 11, 2020, while answering the complaint, James River contended that Mr. Fazio was not covered under its UM policy, and even if James River was liable to Mr. Fazio, its policy was not primary. ECF No. 23 at 22, ¶ 35; ECF No. 23 at 30–31, ¶¶ 17–23. James River counterargues that it was justified in denying liability because there is no Puerto Rico case law

[10] James River argues that this statement is hearsay and should not be considered because Mr. McGovern, as an employee of Metropolitan Casualty, cannot speak on behalf of James River. ECF No. 280-1 at 2 ¶ 14. This argument is unfounded because under the Federal Rules of Evidence, admissions by a party-opponent are not hearsay. *See* Fed. R. Evid. 801(d)(2). "For a statement to be an admission under Rule 801(d)(2), the statement must be made by a party, or by a party's agent or servant within the scope of the agency or employment." *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 34 (1st Cir. 1998). Here, it is clear that Mr. Parks was an employee of James River, as he was the main point of contact in adjusting Mr. Fazio's claim, and that he was acting within his scope of employment by communicating to another insurer regarding Mr. Fazio. Accordingly, the statement is a statement of a party-opponent and therefore not hearsay.

addressing the question of UM or ridesharing coverage and therefore a justiciable legal question was presented. ECF No. 267 at 18. Even so, as explained above, James River's policy clearly shows that Mr. Fazio is insured and that the insurance is primary, and it offers no argument to interpret its policy differently. Therefore, a reasonable jury may find that James River acted in bad faith by denying coverage after making representations of coverage.[11] Notwithstanding, this is a question of intent that is better left for a jury.

Additionally, under Article 27.040 of the Insurance Code, an insurer shall provide a copy of the policy to its insured within 10 days of written notice. 26 L.P.R.A. 2703a. Here, Mr. Fazio requested a copy of the policy for the first time on February 27, 2019. ECF No. 267-1 at 4–5, ¶ 22; ECF No. 278-1 at 5–6. After multiple requests by Mr. Fazio, James River produced, because of a court order, the policy on July 24, 2020. ECF No. 268-1 at 11, ¶ 67; ECF No. 280-1 at 9, ¶ 67. James River argues that its delay was justified because a justiciable legal question was presented, it was at first unclear whether UM or underinsured motorist coverage was applicable, and it was unclear whether James River was the primary insurer in this case. ECF No. 267 at 18. While all these reasons may provide basis for James River to delay payment of a claim, none of these reasons explain why James River was justified in withholding its policy for over a year.

While the parties advance several other arguments addressing the bad faith and contractual breach of the implied covenant of good faith and fair dealing claims, the analysis above is enough to deny both motions for summary judgment on these claims. Each party has brought forth evidence showing that either James River acted in bad faith, or it did not. As was

[11] Even if this court were to determine that James River incorrectly denied liability under its insurance policy as a matter of law, that would not necessarily be enough for Mr. Fazio to succeed on his bad faith claim. *Oriental Fin. Grp., Inc. v. Fed. Ins. Co.*, CV 00-2035, ECF No. 170 (D.P.R. 2005) ("[L]iability for bad faith does not attach merely because an insurer concludes that it has no liability under an insurance policy and that the conclusion is ultimately determined to have been erroneous.")

previously stated, to substantiate a claim of dolo, Mr. Fazio must demonstrate that James River acted with deliberate purpose and intent to avoid its contractual obligations under its policy. *Casco, Inc.*, 2015 WL 4132278, at *2. Here, given the facts presented, James River's motive and intent is not so clear, and therefore these issues are better resolved by a jury. *See Gazelle v. MR 314 Fortaleza LLC*, Civil No. 16-2500, 2019 WL 13193718 at *3 (D.P.R. Mar. 14, 2019) ("[T]here are unsettled issues of motive and intent as to the conduct of the parties, which precludes the court from granting summary judgment."); *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent...are questions better suited for the jury"). Thus, Mr. Fazio's and James River's motions for summary judgment as to the bad faith and contractual breach of the implied covenant of good faith and fair dealing claims are denied.

**E. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Against James River**

Both parties move for summary judgment on Mr. Fazio's tortious breach of the implied covenant of good faith and fair dealing claim. ECF No. 267 at 18–19; ECF No. 268 at 11–13. However, neither party explains the relevant legal standard to assess this specific claim in any of the filings such as the complaint, answer, motions for summary judgment, and oppositions thereof. While the parties have not cited any precedent from Puerto Rico state courts addressing this claim specifically, other states have recognized this remedy in the context of insurance contracts. *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813 (Wyo. 1994) ("Wyoming has recognized that a breach of the duty of good faith and fair dealing may give rise to actions for independent torts of "first party" or "third party" bad faith."); *Cates Constr., Inc. v. Talbot Partners*, 980 P.2d 407, 416 (Cal. 1999) (explaining that in California "tort remedies are available for a breach of the covenant [of good faith and fair dealing] in cases involving

insurance policies”). Other jurisdictions have justified the existence of this cause of action in the insurance context because of “the ‘special relationship’ between insurer and insured, characterized by elements of public interest, adhesion, and fiduciary responsibility.” *Erlich v. Menezes*, 981 P.2d 978, 983 (Cal. 1999) (citations omitted). While punitive damages are generally not recoverable in actions sounding in contract, courts recognizing the tortious breach of the implied covenant of good faith and fair dealing have awarded punitive damages. *EFG Bank AG v. Lincoln Nat’l Life Ins. Co.*, No. CV 17-02592, 2017 WL 4222887 (E.D. Pa. Sept. 22, 2017) (citing *Egan v. Mut. Of Omaha Ins. Co.*, 24 Cal. 3d 809, 820 (1979).

In his motion for summary judgment, Mr. Fazio fails to distinguish his tortious and contractual breach of the implied covenant of good faith and fair dealing claims. ECF No. 268 at 11. Indeed, Mr. Fazio combines both claims in his motion, arguing that he is entitled to judgment as a matter of law as to both claims for the exact same reasons. While addressing both claims simultaneously, Mr. Fazio cites to two cases that fail to develop Mr. Fazio’s tortious breach of the implied covenant of good faith and fair dealing claim: *Punta Lima, LLC v. Punta Lima Development Co., LLC* 440 F. Supp. 3d 130, 155 (D.P.R. 2020) and *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55 (Fla. 1995). *Punta Lima* only addresses the contractual breach of the implied covenant of good faith and fair dealing, not the tortious breach of the implied covenant of good faith and fair dealing. *Punta Lima*, 440 F. Supp. 3d at 154. Additionally, while *Laforet* does address a tortious bad faith claim in the insurance context, Mr. Fazio provides no legal basis or precedent showing that Puerto Rico follows the standard set forth by the Supreme Court of Florida. *Laforet*, 658 So.2d at 57–60. Mr. Fazio’s argument further suffers from the fact that he fails to indicate how his damages under a tortious breach of the implied covenant of good

faith and fair dealing would not overlap, if not totally at least in part, with his contractual dolo and contractual breach of the implied covenant of good faith and fair dealing claims.

In jurisdictions where the tortious breach of the implied covenant of good faith and fair dealing claim is recognized, courts will dismiss a contractual breach of the implied covenant of good faith and fair dealing claim when a party attempts to raise both simultaneously. *L & S Enterprises v. Sentinel Ins. Co.*, No. CV 16-1841, 2016 WL 10592208, at *2 (C.D. Cal. Oct. 24, 2016) (dismissing "[p]laintiff's second cause of action for 'contractual breach of implied covenant of good faith and fair dealing,' . . . , as duplicative of the third cause of action for 'tortious breach of the implied covenant of good faith and fair dealing[]'"); *Larson-Valentine v. Travelers Com. Ins. Co.*, CV 19-1209, 2019 WL 3766562, at *1 (S.D. Cal. Aug. 9, 2019) (dismissing contractual breach of the implied covenant of good faith and fair dealing claim because it was duplicative of tortious breach of the implied covenant of good faith and fair dealing claim). However, in this case, Mr. Fazio has only provided Puerto Rico jurisprudence recognizing the contractual breach of the implied covenant of good faith and fair dealing, not the tortious breach. Therefore, Mr. Fazio's tortious breach of the implied covenant of good faith and fair dealing claim cannot prosper and is dismissed with prejudice.

**F. Tort Claim Against James River**

In his second amended complaint, Mr. Fazio alleged that "[d]ue to the fault and negligence of Ms. Figueroa, *all of the defendants* are jointly and severally liable for" Mr. Fazio's damages. ECF No. 71 at 6, ¶ 33 (emphasis added). As a result, James River moves for summary judgment on the tort claim against it, arguing that Mr. Fazio has not shown that James River was negligent or acted in bad faith. ECF No. 267 at 18–19. The Insurance Code provides that an insured can bring a direct action against his insurance company. *See* 26 L.P.R.A. § 2003.

Therefore, Mr. Fazio could maintain a separate tort claim against James River. However, said tort claim would be permissible in conjunction with the breach of contract claim only if it arose from conditions separate from the insurance contract. *See Nieves Domenech v. Dymax Corp.*, 952 F. Supp. 57, 65–66 (D.P.R. 1996) (citations omitted); *CPC Carolina PR, LLC v. Puerto Rico CVS Pharmacy*, *LLC*, Civ. No. 18-1555, 2020 WL 583476, at *9–10 (D.P.R. Sept. 30, 2020); *Burk v. Paulen*, 100 F. Supp. 3d 126, 136 (D.P.R. 2015). Here, Mr. Fazio fails to illustrate how James River's breach of duty under his tort claim is distinct from James River's breach of its contractual obligation to provide insurance coverage. Indeed, Mr. Fazio does not even address said tort claim in his motion for summary judgment. *See generally* ECF No. 268. Because the court has found that James River is contractually liable to Mr. Fazio as a matter of law and Mr. Fazio has failed to distinguish his tort claim from his breach of contract claim, Mr. Fazio does not have a separate cause of action against James River based in tort. Accordingly, Mr. Fazio's tort claim against James River is dismissed with prejudice.[12]

**G. Unfair Claims Adjustment Practices Claim Against James River**

As discussed above, Mr. Fazio has elected to withdraw his unfair claims adjustment practices claim under the Insurance Code against James River:

> Mr. Fazio cho[o]se[s] to continue the prosecution of his cause of action against James River in Case No. 20-1074, for its failure to act in good faith in the handling of his claim, under the Civil Code. . . . *Mr. Fazio seeks no remedies under the Insurance Code* . . .

ECF No. 268 at 17 (emphasis added). Accordingly, Mr. Fazio's unfair claims adjustment practices claim under the Insurance Code is dismissed with prejudice.

[12] Although the tort claim is dismissed, James River will still be contractually obligated to cover any damages the jury finds against Ms. Figueroa (and possibly Mr. Soto) up to its policy limits.

**H. Defamation Claims Against James River**

Both parties move for summary judgment on Mr. Fazio's defamation claims. Mr. Fazio currently has two pending defamatory libel claims against James River. The first claim arises from a letter sent by James River to the Insurance Commissioner of Puerto Rico (the "Commissioner") on July 13, 2021, where James River wrote, among other things, that it

> has a well-founded reason to believe that the Claimant [Mr. Fazio] violated Art. 27.180 of the Insurance Code of Puerto Rico by requesting compensation for damages that were pre-existing or degenerative or caused as a result of the treatment of the other conditions suffered by the Claimant prior to the motor vehicle accident.

ECF No. 26 at 7 in Case No. 22-1186; ECF No. 30-2 at 1–2, 7–8 in Case No. 22-1186. Article 27.180 of the Insurance Code provides that "any person that intentionally and knowingly [violates its provisions] shall be deemed to have committed fraud for the purposes of this chapter." 26 L.P.R.A. § 2720. Mr. Fazio's second cause of action for defamatory libel arises from Mr. Fazio's allegation that on August 27, 2021, James River "falsely, maliciously and negligently republished its letter dated July 13, 2021" which contains allegedly libelous and defamatory accusations of insurance fraud, when James River included the letter as an attachment to email and written correspondence with the Investigations Division of the Office of the Commissioner. ECF No. 26 at 10, ¶ 47 in Case No. 22-1186; ECF No. 215-9 at 1–3, 6–7.

Mr. Fazio argues that he is entitled to judgment as a matter of law on his defamation claims because the conditional privilege does not apply, and he has satisfied all the elements of his claims. ECF No. 268 at 17–23. James River moves for summary judgment arguing that, under Puerto Rico law, an absolute privilege applies, and in the alternative, the conditional privilege applies. ECF No. 267 at 21, 26. Under Puerto Rico law, protection against defamation derives from Article II, Section 8 of the Constitution of the Commonwealth of Puerto Rico, and "parallel actions for defamation under the Libel and Slander Act of 1902, 32 L.P.R.A. §§ 3141–

3149 (1990)," and Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. § 10801.[13] *Gierbolini Rosa v. Banco Popular de Puerto Rico*, 930 F. Supp. 712, 717 (D.P.R. 1996), *aff'd*, 121 F.3d 695 (1st Cir. 1997); *Porto y Siurano v. Bentley P.R., Inc.*, 132 D.P.R. 331, 343 (1992).

"Claims for defamation encompass both libel and slander." *Díaz v. Gazmey Santiago*, 2020 WL 1042041, at *2 (D.P.R. Mar. 3, 2020). "Libel is the malicious defamation of a person made public by writing, printing, . . . or other mechanical mode of publication tending to subject him to public hatred or contempt, or to deprive him of the benefit of public confidence and social intercourse, or to injure him in his business, or in any other way to throw discredit, contempt or dishonor upon him . . . ." 32 L.P.R.A. § 3142. For a claim of libel to prosper under Puerto Rico law, "a plaintiff must . . . prove: (1) that the information is false; (2) that he or she suffered real damages; and (3) that in the case of a private figure, the publication was negligently made." *González Pérez v. Gómez Águila*, 312 F. Supp. 2d 161, 173 (D.P.R. 2004); *accord Comité Fiestas De La Calle San Sebastián, Inc. v. Cruz*, 207 F. Supp. 3d 129, 147 (D.P.R. 2016); *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 599 (1977).

The codification of the Libel and Slander Act of 1902 introduced the common law qualified privilege "for communications made under an official duty or in the course of a judicial proceeding." *Instituto de Educación Universal, Inc. v. Great Lakes Higher Educ. Corp.*, 2001 WL 1636690, at *3 (D.P.R. Aug. 30, 2001), *aff'd sub nom. Instituto De Educación Universal Corp. v. Great Lakes Higher Educ. Guar. Corp.*, 126 F. App'x 1 (1st Cir. 2005). Specifically, 32 L.P.R.A. § 3144 provides that

[13] In *Gierbolini Rosa*, the court references Section 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141. However, Puerto Rico's general tort statute was replaced in November 2020, and is now denominated as Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. § 10801. Because the allegations in the Member Case pertaining to occurred after November 2020, unlike the allegation in the Lead Case, the new Puerto Rico Civil Code is applicable here.

> A publication or communication shall not be held or deemed malicious when made in any legislative or judicial proceeding or in any other proceeding authorized by law. A publication or communication shall not be presumed to be malicious when made: . . . In a fair and true report of a judicial, legislative, official or other proceeding, or of anything said in the course thereof.

32 L.P.R.A. § 3144. Under Puerto Rico law, "[a] privileged communication is one which, except for the occasion and circumstances under which it was made, would be defamatory and actionable." *Giménez Álvarez v. Silen Maldonado*, 131 P.R. Dec. 91, 99 (1992). The Puerto Rico Supreme Court has indicated that under Puerto Rico law the privilege protecting a publication or communication made in any legislative or judicial proceeding or in any other proceeding authorized by law is a conditional privilege and not an absolute privilege. *Caraballo v. P.R. Illustrado*, 70 D.P.R. 283, 288, 1949 PR Sup. LEXIS 364 (P.R. 1949); *Meléndez Vega v. El Vocero de PR*, 189 D.P.R. 123, 158 n. 28 (2013).

While an absolute privilege operates as an immunity from suit, a "qualified common law privilege under Puerto Rico law limits the extent to which a plaintiff can establish an actionable claim for libel" under certain "circumstances in which a statement is made." *Instituto de Educación Universal, Inc.*, 2001 WL 1636690, at *3–4. The privilege is "conditional" because "the person availing himself of it must use it in a lawful manner and for a proper purpose." *Caraballo*, 70 D.P.R. at 291. As such, the conditional privilege protects "on appropriate occasion, of an inadvertent untruth. It is not to protect a conscious falsehood or, as is sometimes said, behavior which is not in good faith." *Bos. Mut. Life Ins. Co. v. Varone*, 303 F.2d 155, 160 (1st Cir. 1962). Therefore, "a defendant cannot claim the privilege if he did not believe his statement to be true[] or had no reason to believe it true." *Id.* Furthermore, "[w]hen a defendant has established that its publication was subject to a qualified or conditional privilege, the burden shifts to the plaintiff" to prove "malice" meaning that the plaintiff shows that the defendant acted

with an "improper motive" or engaged in an act "which goes beyond[] or lies outside the purpose of the privilege." *Id*. at 158–59.

As a preliminary matter, the court will address James River's argument regarding the immunity afforded to communications made during judicial proceedings. James River disagrees with the court's opinion and order addressing James River's motion to dismiss Mr. Fazio's defamation claims (ECF No. 50 in Case No. 22-1186) and argues that its communications to the Commissioner were absolutely privileged. ECF No. 267 at 21. For the reasons set forth in that opinion and order, the court rejects James River's argument. ECF No. 50 at 8–13 in Case No. 22-1186. Before addressing the merits of Mr. Fazio's defamation claims, the court will address whether the conditional privilege applies. As discussed in this court's opinion and order addressing James River's motion to dismiss (ECF No. 50 in Case No. 22-1186), James River's two letters to the Commissioner were communications made in the course of a proceeding authorized by law. ECF No. 50 at 10–11 in Case No. 22-1186. Therefore, the only issue remaining to determine if the conditional privilege applies is whether James River knew that the statements it made to the Commissioner were false or had no reason to believe they were true. *Varone*, 303 F.2d at 160.

James River asserts that it had reason to believe its statements to be true because (1) Mr. Fazio was assessed with carpal tunnel syndrome on August 29, 2016, before the accident, (2) Mr. Fazio's allegations in the Lead Case have always been that the accident caused his carpal tunnel syndrome, (3) Mr. Fazio certified the allegations of his second amended complaint to be true when he submitted the pre-suit notice (the "Form") to the Commissioner required to institute a civil action for alleged violations of the Puerto Rico Insurance Code, and (4) Mr. Fazio's

medical records indicated that he was claiming damages for preexisting injuries. ECF No. 267 at 29–37.

First, James River points to an August 29, 2016, medical report, arguing that this report conclusively shows that Mr. Fazio was assessed with carpal tunnel syndrome before the accident. ECF No. 267 at 34. While the parties dispute whether this report in fact indicates whether Mr. Fazio was diagnosed with carpal tunnel on August 29, 2016, the content of the report provides a reasonable basis for James River to believe that Mr. Fazio had developed carpal tunnel syndrome in 2016. For example, the report shows that Mr. Fazio's neurological systems were "[p]ositive for tingling, sensory change and focal weakness." ECF No. 267-34 at 86. Moreover, under the reports "assessment and plan," it lists "? [c]arp[a]l tunnel . . . [t]rial of wrist braces at night . . . ? referral to ortho." ECF No. 267-34 at 86. Mr. Fazio makes several arguments as to why this report does not show that he was diagnosed with carpal tunnel before the accident. ECF. No. 278 at 14. The court acknowledges Mr. Fazio's arguments; however, the court makes no determination on whether this report conclusively shows that Mr. Fazio was assessed with carpal tunnel syndrome in 2016. It only finds that this form provided James River with a reason to believe that Mr. Fazio had carpal tunnel syndrome before the accident.

Second, James River argues that it was justified in believing that Mr. Fazio had been claiming damages for preexisting injuries because in the Lead Case he has consistently claimed that the accident caused his carpal tunnel syndrome. ECF No. 267 at 30–31. It is undisputed that on July 13, 2021, and August 27, 2021, the dates James River sent the response letters to the Commissioner, the second amended complaint in the Lead Case alleged that the accident caused Mr. Fazio's carpal tunnel syndrome. ECF No. 267-1 at 20, ¶ 104; ECF No. 278-1 at 27; ECF No. 71 at 4, ¶ 18.a. Therefore, based on the August 29, 2016, report, and other medical

documentation provided to James River at the time of sending the letter to the Commissioner, James River further argues that it was justified in believing that Mr. Fazio was claiming damages for preexisting injuries. ECF No. 267 at 30–31. Mr. Fazio attempts to rebut this argument on the grounds that he could not amend his complaint because the deadline to amend pleadings had expired. ECF No. 278 at 13. Mr. Fazio correctly notes that the period to amend had expired, and furthermore, on February 17, 2021, the court explicitly stated that no further amendments would be authorized. ECF No. 92. However, Mr. Fazio, on his own volition, decided to attach his second amended complaint to the Form sent to the Commissioner without providing any additional clarification regarding his carpal tunnel syndrome. Neither the Insurance Code nor the Form requires a party to attach pleadings when providing notice to the Commissioner. *See* L.P.R.A. § 2716d(3)(a); ECF 267-18 at 2–3. Notwithstanding, even if the submission of the complaint was required, nothing precluded Mr. Fazio from clarifying to the Commissioner that he was seeking compensation for *aggravation* of his carpal tunnel condition. Such failure to clarify the submission to the Commissioner provided James River with a basis to believe that Mr. Fazio was claiming damages for preexisting injuries.

Third, James River contends that it had reason to believe its written statements to be true because on June 28, 2021, when Mr. Fazio sent the Form to the Commissioner, he certified all the information in that request to be true and correct. ECF No. 267 at 32. Attached to that notice was Mr. Fazio's second amended complaint which contained the allegation that the accident caused his carpal tunnel syndrome. ECF No. 267-18 at 3. Indeed, this certification of the second amended complaint approximately two weeks before James River sent its first response letter to the Commissioner could reasonably provide a basis for James River to believe that Mr. Fazio

was seeking damages for the accident causing his carpal tunnel syndrome when the same was a preexisting condition.

Fourth, James River argues that it had reason to believe its statements to be true because Mr. Fazio's medical records indicated that he was claiming damages for preexisting injuries. ECF No. 267 at 33–36. Specifically, James River points to the fact that before the accident, Mr. Fazio was diagnosed with generalized arthralgias, myalgias, and had a past medical history of clotting disorder, CPAP/BiPAP dependence, deep vein thrombosis, fractures, blood clots, joint pain, pneumonia, and sleep apnea. ECF No. 267-1 at 21–22, ¶¶ 109–111, 114; ECF No. 278-1 at 28–30. James River argues that arthralgia is joint stiffness, which symptoms includes back pain, loss of spine flexibility, and swelling and stiffness of the spine. ECF No. 267 at 33–34. Additionally, James River argues that myalgia describes muscles aches and pain, which can involve ligaments and tendons. ECF No. 267 at 34. Referencing the above with Mr. Fazio's allegations of back problems caused by the accident in the second amended complaint,[14] James River asserts that it had reason to believe Mr. Fazio was seeking damages for back injuries he had before the accident. ECF No. 267 at 33–34.[15]

---

[14] "As a proximate result of said occurrence and the carelessness and negligence of Ms. Figueroa, Mr. Fazio sustained the following injuries of a serious, painful and permanent nature, to wit:

> c. cervical sprain;
> d. cervical radiculopathy;
> e. segmental and somatic dysfunction of the cervical region;
> f. sprain of the ligaments of the lumbar region;
> g. segmental and somatic dysfunction of the lumbar region;
> h. segmental and somatic dysfunction of the thoracic region; . . ."

ECF No. 71 at 4–5, ¶ 18c–h.

[15] Furthermore, considering all of Mr. Fazio's diagnoses listed above, James River argues that it had reason to believe the truthfulness of its statements sent to the Commissioner because the second amended complaint stated that as a result of the accident, "he has been, and will be, permanently restricted and deprived of the usual pleasures, pursuits, diversions and recreations of life." ECF No. 71 at 5, ¶ 19; *accord* ECF No. 267 at 35–36.

Mr. Fazio contends that James River lacked any reason to believe its statements of fraud to the Commissioner were true, and therefore the conditional privilege should not apply, because they were made:

> (a) after Mr. Fazio had produced to James River all of the medical records in support of his claim on January 28, 2020, April 6, 2020, October 13, 2020 and January 11, 2021. . . .
>
> (b) after Mr. Fazio had provided James River an Authorization for Production of Medical File on October 13, 2020. . . .
>
> (c) after Mr. Fazio had completed the production of certified copies of his medical records at his burden and expense. . . .
>
> (d) after Mr. Fazio had submitted to James River the supplemental report of Dr. Stewart Gross, amending his professional opinion and stating that the motor vehicle accident did not cause Mr. Fazio's carpal tunnel syndrome but aggravated the condition. . . .

ECF No. 268 at 17–18. Additionally, Mr. Fazio argues that James River could not have believed its accusation to be true because it failed to identify or provide any evidence to the Commissioner to prove that Mr. Fazio committed a violation. ECF No. 268 at 18.

The fact that Mr. Fazio produced all his medical records, provided authorization of his medical file to James River, and paid to produce his medical records, without more, do not necessarily show that James River had reason to believe that its letters to the Commissioner were false. However, Mr. Fazio's point regarding Dr. Stewart Gross's supplemental report warrants further consideration. Essentially, Mr. Fazio argues that once James River received Dr. Stewart Gross's supplemental report filed on June 6, 2021, amending his opinion to the effect or to establish that the accident aggravated his existing carpal tunnel syndrome and did not cause it, James River was put on notice that Mr. Fazio was seeking damages only for his aggravation of carpal tunnel syndrome. ECF No. 268 at 18, 22. Nevertheless, as explained above, Mr. Fazio could have supplemented or clarified in the Form sent to the Commissioner that his carpal tunnel

syndrome was aggravated from the accident, as opposed to originating from it, regardless of the contents of the pleadings attached to said form. Doing so would have effectively put James River and the Commissioner on notice that Mr. Fazio was only seeking damages for the aggravation of his carpal tunnel and avoided any ambiguity contributing to the instant dispute. *See* ECF No. 71 at 4–5. Otherwise, James River could have reasonably viewed Mr. Fazio's notifications to the Commissioner as inconsistent with the communications it had received from Mr. Fazio's legal representation.

In sum, at the time James River sent both letters to the Commissioner, it had reason to believe that Mr. Fazio was asking to be compensated for preexisting conditions such as carpal tunnel, among others, because (1) the allegations in the complaint stated that the accident caused Mr. Fazio's carpal tunnel; (2) the allegations of the second amended complaint had been recently certified to be true and accurate; and (3) no evidence has been brought to the court suggesting that Mr. Fazio sought to clarify his submission to the Commissioner. Additionally, Mr. Fazio's arguments fail to rebut James River's assertions that it had reason to believe that its statements made to the Commissioner were true. While the court states no opinion on whether James River's actions were prudent, based on the evidence above, it concludes a reasonable jury could only find that, regardless of whether James River's statements to the Commissioner were true or not, James River *had reason to believe* that its statements to the Commissioner on July 13, 2021, and August 27, 2021, were true. Accordingly, James River's communications made to the Commissioner were subject to the conditional privilege.[16]

As discussed above, "[w]hen a defendant has established that its publication was subject to a qualified or conditional privilege, the burden shifts to the plaintiff" to prove "malice"

[16] To be clear, having *reason to believe* that something is true is not necessarily the same thing as saying that something is true.

meaning that the plaintiff shows that the defendant acted with an "improper motive" or engaged in an act "which goes beyond[] or lies outside the purpose of the privilege." *Id*. at 158–59. However, 32 L.P.R.A. § 3144 provides that

> A publication or communication shall not be held or deemed malicious when made in any legislative or judicial proceeding or in any other proceeding authorized by law. A publication or communication shall not be presumed to be malicious when made: . . . In a fair and true report of a judicial, legislative, official or other proceeding, or of anything said in the course thereof.

32 L.P.R.A. § 3144. On a motion for summary judgment, the "evidentiary standard in determining whether a genuine issue of actual malice exists . . . is[] whether the evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). In other words, a plaintiff challenging the conditional privilege has the heavy burden to clearly and convincingly show that statements—which are presumed to be without malice—were made with malice.

Mr. Fazio first argues that James River's statements made to the Commissioner were not made in a judicial proceeding—and therefore do not enjoy the presumption under 32 L.P.R.A. § 3144—because the statements had no bearing on the issue of the notification required to institute a civil action for alleged violations of the Puerto Rico Insurance Code. ECF No. 268 at 20. However, that issue was already resolved by this court in its opinion and order addressing James River's motion to dismiss (ECF No. 50 at 10 in Case No. 22-1186) and there is no need to repeat the court's reasoning. Accordingly, as already explained above, James River's statements were made during a judicial proceeding or other proceedings authorized by law and are not presumed to be malicious.

To show malice, Mr. Fazio again points to the fact that Dr. Stewart Gross submitted a supplemental report, which was filed on June 6, 2021. ECF No. 268 at 21. Additionally,

Mr. Fazio mentions that he was assessed with carpal tunnel syndrome on September 25, 2019, by Dr. Jeffrey Gross, which was reconfirmed on February 18, 2020, and October 8, 2020. ECF. No 268 at 22. While these facts provide a basis for Mr. Fazio to argue that he was justified in initially alleging that the accident caused his carpal tunnel syndrome, no reasonable jury could find that these facts show with convincing clarity that James River's statements to the Commissioner were malicious. Because James River is protected by the conditional privilege, the court need not further address the elements of Mr. Fazio's defamatory libel claims. Accordingly, James River's motion for summary judgment on the remaining defamation claims is granted, and those claims are dismissed with prejudice.[17]

## V. CONCLUSION

For the foregoing reasons, Mr. Fazio's motion for summary judgment (ECF No. 268) is GRANTED IN PART and DENIED IN PART, and James River's motion for summary judgment (ECF No. 267) is GRANTED IN PART and DENIED IN PART. James River's motion for summary judgment is GRANTED regarding Mr. Fazio's tortious breach of the implied covenant of good faith and fair dealing, tort, and defamation claims against James River. Therefore, said claims are DISMISSED WITH PREJUDICE. Additionally, because Mr. Fazio has withdrawn his claim for unfair claims adjustment practices, that claim against James River is also DISMISSED WITH PREJUDICE.

Mr. Fazio's claims for bad faith or contractual breach of the implied covenant of good faith and fair dealing against James River, breach of contract against James River, and tort against Ms. Figueroa and Mr. Soto remain outstanding for trial. As to James River's crossclaims

[17] As a result of this Opinion and Order and the Opinion and Order in the Member Case (ECF No. 50 in Case No. 22-1186), no claims remain outstanding in the Member Case because all claims in said case have been dismissed with prejudice.

against Mr. Soto and Ms. Figueroa, those crossclaims remain alive because James River did not move for summary judgment with respect to its crossclaims. However, in light of this Opinion and Order, James River's crossclaim against Metropolitan Casualty asserting that Metropolitan Casualty be called to respond first for any damages proven by Mr. Fazio against James River is untenable.[18] Likewise, Metropolitan Casualty's counterclaim against James River asserting that James River's insurance policy is primary is maintained.

Mr. Fazio's following claims remain set for trial as to the issue of liability and damages: (1) bad faith or contractual breach of the implied covenant of good faith and fair dealing against James River and (2) tort against Mr. Soto. Moreover, Mr. Fazio's following claims remain set for trial only as to the issue of damages: (1) tort against Ms. Figueroa and (2) breach of contract against James River. Additionally, because the court finds that James River is liable to Mr. Fazio for breach of contract as a matter of law, any damages assigned to Ms. Figueroa (and possibly Mr. Soto) will be imputed to James River up to its policy limits.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of February 2024.

s/Marcos E. López
U.S. Magistrate Judge

[18] If the jury finds that Mr. Fazio's damages exceed James River's policy limits, however, Metropolitan Casualty will be responsible for said damages not to exceed its own policy limits.